## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| **J. JOHN MARSHALL, ESTATE OF** | ) | |
| **MARJORIE MARSHALL, and** | ) | |
| **KIMBERLY WILEY** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:11 CV 332** |
| | ) | |
| **JP MORGAN CHASE BANK, AMERIPRISE** | ) | |
| **BANK, FIDELITY NATIONAL FIELD** | ) | |
| **SERVICES, INC., JAKK MORTGAGE** | ) | |
| **COMPANY, LPS, FIELD SERVICES, ROBERT** | ) | |
| **HASBERGER , CITY OF ELKHART, CHIEF** | ) | |
| **DALE PFLIBSEN, CPL. MICHAEL** | ) | |
| **WINDMILLER, PTLMN. BRANDON** | ) | |
| **ROUNDTREE, SGT. TRAVIS SNIDER,** | ) | |
| **PTLMN. MICHAEL JANIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter is before the court on defendants JAKK Mortgage Company

("JAKK") and Robert Hashberger's motion for summary judgment on plaintiffs John

Marshall, the Estate of Marjorie Marshall, and Kimberly Wiley's ("plaintiffs")[1] claims.

(DE # 115.) Plaintiffs have filed a response (DE # 132), and defendants have filed a

reply. (DE # 135.) For the following reasons, that motion is granted.

---

[1] In an order being issued simultaneously with this one, the court will dismiss all of plaintiff Wiley's claims against all defendants for failure to prosecute. When the court uses "plaintiffs" in the analysis section of this order, it will be referring to only John Marshall and the Estate of Marjorie Marshall.

## I.    Facts and Background

This case has been pending for quite some time, largely due to the fact that plaintiffs have delayed their prosecution of this case at almost every stage of the litigation. (*See e.g.,* DE # 70.) Each group of defendants in this case has filed a separate motion for summary judgment, and plaintiffs have filed a collective response to all three motions. (DE # 132.) Plaintiffs' response brief does not have "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary[,]" as required by N.D. IND. LOCAL RULE 56-1(b)(2). Plaintiffs' response is rife with grammatical and spelling errors, and often references facts without any citation to the record. Additionally, plaintiffs' response fails to address the substance of most of the arguments made by defendants in their three motions for summary judgment. Despite the inadequacies in plaintiffs' response, the court will do its best to accurately summarize the facts and arguments that the parties have set out in their briefs.

The following facts come from defendant JAKK and Hashberger's brief in support of their motion for summary judgment and the exhibits attached to that brief. Because plaintiffs have not addressed any of these facts in their response brief, with the exception of a few the court will note below, the court will treat these facts as undisputed. FED. R. CIV. P. 56(e)(2). The court will also add any additional facts that

plaintiffs raise in their response brief to the extent those facts are relevant to defendants'

motion and are supported with citations to the record.[2]

This suit arises out of events that took place on August 20, 2009 at 1625

Brookwood Drive in Elkhart Indiana ("the property"). (*See* DE # 116 at 2; DE # 37.) At

the time the relevant events in this case took place, the property was in foreclosure by

the first mortgagee JP Morgan Chase Bank ("Chase"). (*See* DE # 116 at 2; DE # 37.)

Plaintiff John Marshall executed the mortgage on the property. (*See* DE # 116 at 3;

DE # 116-1 at 15; DE # 116-1 at 24.) The mortgage was a valid first lien on the property.

(*See* DE # 116 at 3; DE # 116-1 at 15-16.) The terms of the mortgage required plaintiff

John Marshall to make timely mortgage payments. (*See* DE # 116 at 3; DE # 116-1 at 16.)

The terms of the mortgage also allowed Chase, as the lender, to secure the

property. (*See* DE # 116 at 3; DE # 116-1 at 16; DE # 116-1 at 26.) The mortgage states:

> If Borrower fails to perform the covenants and agreements contained in this
> Security Instrument, or there is a legal proceeding that may significantly
> affect Lender's rights in the Property . . . then Lender may do and pay for
> whatever is necessary to protect the value of the property and Lender's
> rights in the property. Lender's actions may include . . . entering on the
> Property to make repairs.

(DE # 116-1 at 26.) The mortgage goes on to state that "Lender or its agents may make

reasonable entries upon and inspections of the Property." (*Id.*)

---

[2] In their response, plaintiffs attempt to incorporate by reference "Paragraphs 1
through 4" of JAKK and Hashberger's "III. Circumstances and Statements of Claims."
(DE # 132 at 2.) There is no such section in either defendants' motion for summary
judgment or their brief in support of their motion for summary judgment. (DE # 115;
DE # 116.)

Plaintiff John Marshall ("Marshall") has read the language of the mortgage for the property, and understands that a mortgage provides security to a lender. (*See* DE # 116 at 3-4; DE # 116-1 at 61; Marshall Dep. at pp. 100:4-6, 101:5-8.) Marshall was aware that the mortgage that he signed for the property included a provision that allowed Chase to enter the property if he failed to make the mortgage payments. (*See* DE # 116 at 4; DE # 116-1 at 61-62; Marshall Dep. at pp. 101:24, 102:6.) In August of 2009, Marshall was not current on his mortgage payments, and knew that he had not paid his mortgage on the property for almost a year. (*See* DE # 116 at 4; DE # 116-1 at 62; Marshall Dep. at p. 102:7-18.) Marshall was also aware that the locks to the home located on the property had been changed in early 2009 due to his failure to make the mortgage payments. (*See* DE # 116 at 4; DE # 116-1 at 47, 51-52; Marshall Dep. at pp. 43:4-6, 61:16-62:11)

Despite knowing that he was not current on his mortgage payments, and that the locks to the home had been changed, Marshall made no attempt to get his payments on the mortgage up to date. (*See* DE # 116 at 4; DE # 116-1 at 54; Marshall Dep. at pp. 70:9-71:5.) After the locks had been changed, the only way Marshall ever got into the house was when he was with plaintiff Wiley, and when she was able to find another way to enter the home. (*See* DE # 116 at 4; DE # 116-1 at 47, 51-52; Marshall Dep. at pp. 42:24-43:25, 61:16-62:9.) Marshall and Wiley were not able to gain access to the house very often. (*See* DE # 116 at 4-5; DE # 116-1 at 52; Marshall Dep. at p. 65:9-23.)

Defendant JAKK is a mortgage company that provides residential property inspections for mortgage servicers, including reporting on property vacancies. (*See* DE # 116 at 5; DE # 116-1 at 76.) In August of 2009, defendant Hashberger was working as a subcontractor for JAKK. (*See* DE # 116 at 5; DE # 116-1 at 76.) On August 20, 2009, JAKK was hired by Chase to perform a visual inspection of the property.[3] (*See* DE # 116 at 5; DE # 116-1 at 76.) Hashberger, in turn, was hired by JAKK to actually carry out the inspection. (*See* DE # 116 at 5; DE # 116-1 at 76.) On multiple occasions prior to August 20, 2009, Hasberger had observed the property, and had never seen any cars or any people at the property. (*See* DE # 116 at 5; DE # 116-1 at 76.) Hashberger was also aware that the locks to the house had previously been changed to prevent unauthorized entry. (*See* DE # 116 at 5; DE # 116-1 at 76.)

On August 20, 2009, as Hashberger approached the property, he noticed that the front door of the home was open and that there were two vehicles parked in the driveway. (*See* DE # 116 at 5; DE # 116-1 at 76.) Because Hashberger knew that the property had previously been secure and vacant, he approached the front door where he encountered plaintiff Wiley. (*See* DE # 116 at 5; DE # 116-1 at 76.) Hashberger inquired as to why Wiley was at the property, and Wiley did not indicate why she was

---

[3] The evidence from some of the other co-defendants' motions for summary judgment in this case reveal that there were actually two other entities involved with securing the property. That fact is irrelevant to the analysis set out below, so the court will not go into detail on this issue.

at the property or that she was the owner of the property. (*See* DE # 116 at 5; DE # 116-1 at 76.)

Plaintiff John Marshall then came to the door. (*See* DE # 116 at 6; DE # 116-1 at 76.) Marshall did not identify himself to Hashberger, but instead started yelling at Hashberger to get off of the property. (*See* DE # 116 at 6; DE # 116-1 at 76.) Marshall also placed his hands on Hashberger.[4] (*See* DE # 116 at 6; DE # 116-1 at 76.) Hashberger left the property after failing to engage in a conversation with Marshall about Marshall and Wiley's presence at the property. (*See* DE # 116 at 6; DE # 116-1 at 76.) Thus,

---

[4] In his deposition, Marshall denied touching Hashberger in any way, and also testified that there was no yelling during their encounter. (DE # 132 at 2; DE # 116-1 at 57; Marshall Dep. At p. 83:22-84:14.) Later in his deposition, however, Marshall very clearly testified that he "held" Hashberger's arm as he was escorting Hashberger out of the house. (DE # 116-1 at 70; Marshall Dep. at p. 137:19-23.) The court concludes that Marshall's deposition testimony regarding whether or not he touched Hashberger during their encounter is insufficient to create a genuine factual dispute on this issue. *See Steinhauer v. DeGolier*, 359 F.3d 481, 484 n.1 (7th Cir. 2004) (Deponent's "speculative and inconsistent deposition testimony fails to create a genuine factual dispute[.]"); *see also In re Asbestos Products Liability Litigation (No. V)*, 578 F. App'x 160, 162 (3rd Cir. 2014) ("[W]e do not see how any reasonable jury could credit Stevens's internally inconsistent deposition testimony and return a verdict for the plaintiff."). Therefore, the court will treat as undisputed that Marshall grabbed Hashberger's arm as he escorted Hashberger out of the house.

With regard to the dispute over whether Marshall yelled at Hashberger inside the house, the court will construe this factual dispute in the light most favorable to plaintiffs, as it must in reviewing defendants' motion for summary judgment.

Marshall had given Hashberger no explanation for why he was at the property.[5] (*See* DE # 116 at 6; DE # 116-1 at 76.)

After leaving the property, Hashberger contacted the Elkhart Police Department to report that despite the property's previous history of being secure and vacant, there were people currently at the house that may have been stealing things. (*See* DE # 116 at 6; DE # 116-1 at 76.) Hashberger also told the police that he had been attacked by a man at the property that he had never seen before. (*See* DE # 116 at 6; DE # 116-1 at 77.)

Prior to August 20, 2009 Hashberger had never seen or been in contact with either Marshall or Wiley, and had no knowledge of their identities when he saw them on the property. (*See* DE # 116 at 6; DE # 116-1 at 77.) Before the police arrived at the property, Hashberger observed Wiley and Marshall exit the home and move the two vehicles parked in the driveway to somewhere not visible from the street. (*See* DE # 116

---

[5] Hashberger testified that Marshall would not engage in a conversation with him, and that Hashberger left the property without any sort of explanation as to why Marshall and Wiley were there. (*See* DE # 116 at 6; DE # 116-1 at 76.) In their response brief, plaintiffs argue that several factual issues requiring trial exist, including "[w]hether Hashberger was told by Marshall that Marshall was the owner of the house." (DE # 132 at 6.) Plaintiffs, however, do not direct the court to any evidence that would support their claim that Marshall told Hashberger that he was the owner of the house. Although plaintiffs do cite the record for other assertions of fact, they do not for this one. (*See* DE # 132 at 2.) Additionally, although plaintiffs generally "incorporate by reference" all of the exhibits attached to their response brief (*see id.*), this lends them no support. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *see also Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2008) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies."). The court, therefore, will not consider this alleged fact in ruling on defendants' motion to summary judgment.

at 6; DE # 116-1 at 77.) After going back into the house, plaintiffs shut the front door. (*See* DE # 116 at 6; DE # 116-1 at 77.)

Approximately 15-30 minutes later, Elkhart police officers arrived at the property. (*See* DE # 116 at 7; DE # 116-1 at 58.) The police officers knocked on the front door, but no one answered. (*See* DE # 116 at 7; DE # 116-1 at 77.) The officers eventually encountered Marshall and Wiley on the back porch of the home, questioned Marshall and Wiley for 30-45 minutes, and then left. (*See* DE # 116-1 at 59; DE # 37 at 5-6.) No charges were filed against either Wiley or Marshall. (DE # 37 at 5-6.)

In their amended complaint, plaintiffs brought a federal claim under 42 U.S.C. § 1983 and state-law claims of negligence, trespass, and false imprisonment against JAKK and Hashberger.[6] The court previously dismissed plaintiffs' section 1983 claim against JAKK and Hashberger (DE # 62 at 9-10), and therefore, plaintiffs' only remaining claims against JAKK and Hashberger are their claims of negligence, false imprisonment, and trespass.[7]

---

[6] As defendants point out in their brief, plaintiffs' amended complaint actually does not appear to bring any claims against Hashberger. (DE # 116 at 7-8.) For the sake of argument, the court will assume that plaintiffs intended to bring their negligence and false imprisonment claims against Hashberger. Defendants point out that plaintiffs' complaint also states: "[I]t never occurred to Marshall to press charges to be brought against Hasberger [sic] for his wrongful acts which included . . . filing a wrongful report and trespass." (DE # 37 at 9.) In their response brief, plaintiffs state there is a question of material fact regarding whether Hashberger trespassed on the property. (DE # 132 at 1.) The court will therefore also assume that plaintiffs are also bringing a trespass claim against Hashberger.

[7] Neither plaintiffs' amended complaint (DE # 37) nor plaintiffs' response brief (DE # 132) make clear which claims plaintiffs are asserting on behalf of the Estate of

## II.      Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment,

after adequate time for discovery, against a party "who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there

are no disputed issues of material fact and the movant must prevail as a matter of law.

In other words, the record must reveal that no reasonable jury could find for the non-

moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir.

1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these

requirements have been met; it may discharge this responsibility by showing that there

is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of

Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To

overcome a motion for summary judgment, the non-moving party must come forward

with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of

a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing

---

Marjorie Marshall. Plaintiffs also do not put forth any arguments specific to the Estate of Marjorie Marshall. (DE # 132.) As the court will explain below, there are no genuine issues of fact requiring a trial in this case, so the court will assume that plaintiffs are asserting all remaining claims on behalf of the Estate of Marjorie Marshall.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

## III.    Analysis

### A. Negligence

Plaintiffs, in their amended complaint, allege that defendants are liable for negligence because they failed to confirm ownership of the property prior to entering onto the property and because defendants failed to obtain a court ordering authorizing

them to enter onto the property.[8] (DE # 37 at 10.) In their motion for summary judgment, defendants argue that plaintiffs' negligence claim fails because plaintiffs cannot prove that defendants owed them a duty to confirm ownership of the property or to obtain a court order authorizing entry onto the property. (DE # 116 at 10.) Plaintiffs do not respond to this argument. (DE # 132.)

 Under Indiana law, a negligence claim requires proof of three elements: "(1) a duty on the part of defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Miller v. Griesel*, 308 N.E.2d 701, 706 (1974). Before the case presents a jury question, there are questions of law to be decided by the court, the first being essentially the initial element needed to establish negligence, that is, whether the defendant owed the plaintiff a duty. *Id.* "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively for the court." *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994).

The Indiana Supreme Court has stated that "in order for a court to impose a duty[,]" a court must balance three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy

_____

[8] To the extent that plaintiffs bring this claim against Hashberger in addition to JAKK, the court notes that the following analysis applies to both defendants.

11

concerns." *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991). The Indiana Supreme Court

has also stated:

> Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Prosser & Keeton on Torts, § 53 (5th ed. 1984). Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Id.* at 997.

With regard to the first factor in determining duty, defendants argue that

because there was no preexisting relationship between defendants and plaintiffs, this

factor weighs in favor of finding no duty. (DE # 116 at 11-12.) Plaintiffs do not respond

to this argument in their brief. (DE # 132.)

It is undisputed that Hashberger had no knowledge of the plaintiffs prior to the

day of the incident. Plaintiffs have not put forth any argument or evidence that would

support a finding that any relationship existed between plaintiffs and defendants prior

to August 20, 2009. "[T]he absence of any relationship between the parties militates

against imposing a duty on defendants[,]" *McFarland Foods Corp. v. Chevron USA, Inc.*,

No. IP 99-1489, 2000 WL 684265, at *5 (S.D. Ind. May 16, 2000), and the court therefore

finds that the relationship factor of the duty test weighs in favor of finding no duty.

With regard to the next factor, defendants argue that it was not reasonably

foreseeable "to know that observation of property known to previously be vacant and

secured for several months, would turn into an incident prompting the police to be called to further investigate the status of the property, which would result in the plaintiffs alleging injury . . . ." (DE 116 at 12-13.) Plaintiffs do not respond to this argument in their brief. (DE # 132.)

"In analyzing the foreseeability component of duty, we focus on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Webb,* 575 N.E.2d at 997. Thus, the "[i]mposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm." *Id.*

The court concludes that it was not foreseeable to JAKK that sending Hashberger, who had checked on the property several times before and knew that it was vacant and that the locks had been changed, to check on the property without first confirming the ownership of the property or obtaining a court order prior to entering, would result in the injuries alleged by plaintiffs. As noted earlier, Hashberger had observed the property numerous times before, and had never seen any people or activity at the property. (DE # 116 at 5; DE # 116-1 at 76.) It was simply not foreseeable to defendants that by failing to check the ownership of the property and failing to obtain a court order to enter the property on this particular day, that the property's owner, who had been locked out of the house after he failed to make his mortgage payments, and his assistant, would be harmed in the manner alleged in the complaint

after they had obtained entry into the house despite previously being locked out. The foreseeability factor therefore weighs in favor of finding no duty.

Finally, defendants argue that public policy considerations weigh in favor of finding no duty in this case. (DE # 116 at 14.) Plaintiffs do not respond to this argument in their brief. (DE # 132.) The court agrees with defendants that public policy favors a finding of no duty in this case. First, requiring defendants to check ownership of the property and obtain a court order to enter the property when defendants already had a contractual right to enter onto the property to secure it and make inspections (DE # 116-1 at 26) would render the contract moot, and discourage future parties from attempting to plan for unexpected contingencies in mortgage contracts. Additionally, to require someone to check ownership of a house prior to alerting police to suspicious activity would discourage people from contacting the police when they see something suspicious.

As noted earlier, plaintiffs do not respond to the "duty" argument or address any of the three *Webb* factors discussed above. Plaintiffs only argument with respect to their negligence claim is that JAKK can be responsible for the acts of Hashberger, even though Hashberger was an independent contractor. (DE # 132 at 2-3.) This argument is made in response to defendants' argument that a principal cannot be liable for the negligence of an independent contractor. (DE # 116 at 15) Thus, defendants' argument is that, if plaintiffs are attempting to impose liability on JAKK for any negligence of

Hashberger, that theory must fail because Hashberger was an independent contractor. (*Id.*)

"The long standing general rule is that a principal is not liable for the negligence of an independent contractor." *Gwinn v. Harry J. Kloeppel & Assocs., Inc.*, 9 N.E.3d 687, 691 (Ind. Ct. App. 2014). There are, exceptions to this rule, however, when the principal retains control over the work of the independent contractor and in several other situations, including*:*

> (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing a specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will likely cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.

*Id.*; *see also Western Adjustment & Inspection Co. v. Indiana Gross Income Tax Div.*, 142 N.E. 2d 630, 634 (Ind. 1957) ("An independent contractor agrees to accomplish certain results . . . but such contractor is not controlled in the details, manner, or particular method of performing the task. An agent, on the other hand, is subject to the control of the principal with respect to the details of the work."). *Burkett v. Crulo Trucking Co., Inc.*, 355 N.E.2d 253, 261 (Ind. Ct. App. 1986).

Plaintiffs do not dispute that Hashberger was an independent contractor in this case. (DE # 132 at 2-3.) Instead of arguing that point, plaintiffs appear to be arguing that defendants' motion for summary judgment on their negligence claim should be denied because it is possible for a principal to be liable for the acts of an independent contractor in certain circumstances. (DE # 132 at 2-3.) Plaintiffs, however, have not put forth any

argument or evidence that would raise an issue of fact on whether any of the five exceptions listed above exist in this case, and have not directed the court to any evidence that indicates that either JAKK or Chase had any control over Hashberger.

The only argument plaintiffs make on this issue is that "there is a fact dispute or unresolved fact dispute by virtue of the omission in this record of the actual contract or contracts creating the relationship or relationships between and among [Chase, JAKK, and Hashberger]." (DE # 132 at 3.) Plaintiffs, once again, however, point to no actual evidence that would support an inference that any of the above situations existed in this case, and they cannot fend off summary judgment with "speculation[.]" *See Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009); *see also McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Plaintiffs' argument therefore fails.

In sum, the factors set out in *Webb* all weigh in favor of concluding that defendants owed plaintiffs no duty in this case. Therefore, the court concludes that no duty existed in this case, and defendants are entitled to summary judgment on plaintiffs' negligence claim. *See Erwin v. HSBC Mortg. Services, Inc.*, 983 N.E.2d 174, 178 (Ind. Ct. App. 2013) ("[I]n a negligence case, summary judgment is particularly appropriate when the court determines that there is no duty because, absent a duty, there can be no breach and, therefore, no negligence." (citations omitted)).

**B. False Imprisonment**

Defendants next argue that they are entitled to summary judgment on plaintiffs' false imprisonment claim. (DE # 116 at 17.) Plaintiffs do not respond to this argument in their brief. (DE # 132.)

As the court noted in an earlier order:

> Under Indiana law, false imprisonment is defined as either "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (citation and quotation omitted). It is possible, however, for someone who contacts the police to report a crime to be held liable for false imprisonment if the statement the person made to the police was motivated by an ill will or the person knowingly gave false information to police. *Veneman v. Jones*, 20 N.E. 644, 646 (Ind. 1889); *see also Williams v. Tharp*, 914 N.E.2d 756, 759-62, 769 (Ind. 2009); *Conn v. Paul Harris Stores, Inc.*, 439 N.E.2d 195, 197-99 (Ind. Ct. App. 1982).

(DE # 62 at 10-11.)

Plaintiffs do not appear to allege that defendants restrained them unlawfully by themselves, so their claim must be based on the argument that when Hashberger called the police to let them know someone was at the property, he was motivated by an ill will or knowingly gave false information to the police. (DE # 37 at 10.) Defendants argue that there is no evidence to support plaintiffs' claim that Hashberger reported plaintiffs' presence at the property because he was motivated by an ill will or that he gave the police knowingly false information about the incident. (DE # 116 at 17.) Plaintiffs have not responded to this argument. (DE # 132.)

Prior to arriving at the property on August 20, 2009, Hasberger had observed the property numerous times, and had never seen any cars or any people at the property. (*See* DE # 116 at 5; DE # 116-1 at 76.) He also knew that the locks to the house had

previously been changed to prevent unauthorized entry. (*See* DE # 116 at 5; DE # 116-1 at 76.) Upon his arrival at the property on August 20, 2009, Hashberger noticed that the front door to the home was open and that there were two vehicles parked in the driveway. (*See* DE # 116 at 5; DE # 116-1 at 76.)

Because Hashberger knew that the property had previously been secure and vacant, he approached the front door where he encountered plaintiff Wiley, and eventually plaintiff Marshall. (*See* DE # 116 at 5-6; DE # 116-1 at 76.) Despite encountering both plaintiffs, Hashberger left without an answer as to why either plaintiff was in the house. (*See* DE # 116 at 5; DE # 116-1 at 76.) Additionally, it is undisputed that Marshall physically touched Hashberger as Marshall escorted Hashberger out of the house. (DE # 116-1 at 70; Marshall Dep. 137:19-23; DE # 116-1 at 76.)

After leaving the property, Hashberger contacted the Elkhart Police Department to report that despite the property's previous history of being secure and vacated, there were people currently at the house that may have been stealing things. (*See* DE # 116 at 6; DE # 116-1 at 76.) Hashberger also told the police that he had been attacked by a man at the property that he had never seen before. (*See* DE # 116 at 6; DE # 116-1 at 77.)

Although there is a factual dispute about the encounter between Marshall and Hashberger – notably whether Marshall yelled at Hashberger -- this dispute is not genuine. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The aforementioned factual dispute is not genuine because even construing the facts in the light most favorable to plaintiffs, no reasonable jury could conclude that either defendant is liable for false imprisonment under Indiana law. It is important to keep in mind what Hashberger told the police – that there were two people inside the house, which had previously been secure and vacant, that may have been stealing things, and that an unknown man inside the property had attacked him – with the undisputed facts known to Hashberger at the time he made the call: he knew that the house had been vacant on the multiple prior occasions that he checked on the house, he knew that the locks had been changed, he did not know either Wiley or Marshall, he had received no explanation from either Wiley or Marshall as to why they were in the house, and that Marshall had physically touched Hashberger as Marshall escorted Hashberger out of the house.

Thus, nothing that Hashberger relayed to the police has been disputed by plaintiffs with evidence in the record. And the undisputed facts that Hashberger relayed to the police were sufficient to justify the officers' decision to investigate the situation at the property.[9] The court concludes that no reasonable jury could find that

---

[9] Even if Marshall had provided evidence adequate to create a disputed issue of fact on whether or not he physically touched Hashberger, summary judgment in defendants' favor would still be appropriate because all of the other information Hashberger told to the police is undisputed and would have in itself justified the officers' decision to investigate the situation at the property. *Conn v. Paul Harris Stores,*

Hashberger's report to the police was either motivated by an ill will toward plaintiffs or contained information Hashberger knew to be false. Defendants' motion for summary judgment will therefore be granted as it relates to plaintiffs' false imprisonment claim.

### C. Trespass

Defendants finally argue that they are entitled to summary judgment on plaintiffs' trespass claim. (DE # 116 at 19.) Defendants argue that Hashberger had a right to enter onto the property and left as soon as Marshall told him to leave. (*Id.* at 19-20.) Plaintiffs do not respond to this argument in their response brief, other than noting that a disputed issue of fact exists with regard to whether "Hashberger trespassed on the . . . property." (DE # 132 at 1.) Conclusory assertions unsupported by evidence or argument, however, are not sufficient to defeat summary judgment. *Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 894 (7th Cir. 2003).

To succeed on a claim for trespass under Indiana law, a plaintiff must prove two elements: "(1) the plaintiff must show that he possessed the land when the alleged trespass occurred, and (2) the plaintiff must demonstrate that the alleged trespasser entered the land without a legal right to do so." *Holland v. Steele*, 961 N.E.2d 516, 525 (Ind. Ct. App. 2012); *see also Bentz v. City of Kendallville*, 577 F.3d 776, 781 (7th Cir. 2009). Additionally, "[a]fter lawfully entering land, a defendant may become a trespasser if he

_____

*Inc.*, 439 N.E.2d 195, 198-99 (Ind. Ct. App. 1982) ("[L]iability will not be imposed when the defendant does nothing more than detail his version of the facts to a policeman and ask for his assistance, leaving it to the officer to determine what is the appropriate response, at least where his representation of the facts does not prevent the intelligent exercise of the officer's discretion." (citations and quotations omitted)).

fails to leave when his presence is no longer lawful." *Turner v. Sheriff of Marion County*, 94 F. Supp. 2d 966, 984 (S.D. Ind. 2000); *see also Indianapolis Street Railway Co. v. Hockett*, 67 N.E. 106, 108 (Ind. 1903).

As defendants correctly point on in their brief (DE # 116 at 20), Hashberger entered the property pursuant to a right to do so set out in the mortgage agreement. (DE # 116-1 at 26.) Plaintiffs have not put forth any argument or evidence that would indicate that Hashberger did not have a contractual right to enter onto the property. And the only evidence the court has regarding when Marshall asked Hashberger to leave the property is that Hashberger immediately left the property. (*See* DE # 116 at 6; DE # 116-1 at 76.) There is no evidence that Hashberger failed to leave after Marshall told him to. Thus, defendants have met their initial burden of showing that no material fact exists indicating that Hashberger was ever on the property without a legal right to do so. Because plaintiffs have failed to put forth any argument or evidence to indicate the contrary is true, defendants are entitled to summary judgment on plaintiffs' trespass claim.

## IV.    Conclusion

For the foregoing reasons, defendants' motion for summary judgment (DE # 115) is **GRANTED**.

**SO ORDERED.**

Date: March 30, 2015

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT
