IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| J. JOHN MARSHALL, ESTATE OF MARJORIE MARSHALL, and KIMBERLY WILEY | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:11 CV 332 |
| JP MORGAN CHASE BANK, AMERIPRISE BANK, FIDELITY NATIONAL FIELD SERVICES, INC., JAKK MORTGAGE COMPANY, LPS, FIELD SERVICES, ROBERT HASBERGER , CITY OF ELKHART, CHIEF DALE PFLIBSEN, CPL. MICHAEL WINDMILLER, PTLMN. BRANDON ROUNDTREE, SGT. TRAVIS SNIDER, PTLMN. MICHAEL JANIS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court on defendant JP Morgan Chase Bank's ("defendant") motion for summary judgment on plaintiffs John Marshall, the Estate of Marjorie Marshall, and Kimberly Wiley's ("plaintiffs")[1] claims. (DE # 140.) Plaintiffs

---

[1] In an order being issued simultaneously with this one, the court will dismiss all of plaintiff Wiley's claims against all defendants for failure to prosecute. When the court uses "plaintiffs" in the analysis section of this order, it will be referring to only John Marshall and the Estate of Marjorie Marshall.

have filed a response (DE # 132), and defendant has filed a reply.[2] (DE # 134.) For the following reasons, that motion is granted.

I.     Facts and Background

This case has been pending for quite some time, largely due to the fact that plaintiffs have delayed their prosecution of this case at almost every stage of the litigation. (*See e.g.,* DE # 70.) Each group of defendants in this case has filed a separate motion for summary judgment, and plaintiffs have filed a collective response to all three motions for summary judgment. (DE # 132.) Plaintiffs' response brief does not have "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary[,]" as required by N.D. IND. LOCAL RULE 56-1(b)(2).[3] Plaintiffs' response is rife with grammatical and spelling errors, and often references facts without any citation to evidence. Additionally, plaintiffs' response fails to address the substance of most of the

---

[2] The court denied defendant's original motion for summary judgment with leave to refile after discovering that a key piece of defendant's evidence was left blank. (*See* DE # 139.) The court granted defendant leave to refile the motion with the piece of evidence properly filled out, if it was available to them. (*Id.*) The court also granted plaintiffs time to file a response to the new motion, even though the substance of the brief was unchanged. (*Id.*) Defendant filed a new motion within the time allowed (DE # 140), and plaintiffs did not file a response.

[3] Plaintiffs' response brief is divided into three sections, with each section addressing one of the moving defendant's motions. (DE # 132.) The closest plaintiffs come to including a "Statement of General Disputes" in their response brief is a list of the factual disputes that exist with regard to one of the motions for summary judgment filed by two other defendants. (*Id.* at 1.) Plaintiffs included no such similar content in their response to defendant Chase's motion for summary judgment. (*Id.* at 5.)

arguments made by defendants in their three motions for summary judgment. Despite the inadequacies in plaintiffs' response, the court will do its best to accurately summarize the facts and arguments that the parties have set out in their briefs.

The following facts come from defendant Chase's brief in support of its motion for summary judgment and the exhibits attached to that brief, unless otherwise noted. Because plaintiffs have not addressed any of these facts in their response brief, and in fact have included no citations to the record in the portion of their response that addresses defendant's motion, the court will treat these facts as undisputed. FED. R. CIV. P. 56(e)(2).

This suit arises out of events that took place on August 20, 2009 at 1625 Brookwood Drive in Elkhart Indiana ("the property"). (DE # 37.) Defendant Chase is in the business of lending money to borrowers to allow those borrowers to purchase residential properties. (DE # 141 at 2; DE # 141-1 at 2.) When someone has borrowed from Chase and is not making the requirement payments under the mortgage, Chase forecloses on the property. (DE # 141 at 2; DE # 141-1 at 2.) On August 20, 2009, Chase held a valid first mortgage on the property in this case. (DE # 141 at 2; DE # 37.)

Plaintiff John Marshall ("Marshall") and his wife Marjorie Marshall, who is now deceased, are the named mortgagors on property's mortgage. (DE # 141 at 3; DE # 141-3 at 1.) By August 20, 2009, plaintiff John Marshall had defaulted on the mortgage by failing to make the required mortgage payments for almost a year. (DE # 141 at 3;

DE # 141-2 at 34; Marshall Dep. at p. 34:9-25.) The terms of the mortgage allowed Chase, as the lender, to secure the property. (DE # 141-3 at 3.) The mortgage states:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property . . . then Lender may do and pay for whatever is necessary to protect the value of the property and Lender's rights in the property. Lender's actions may include . . . entering on the Property to make repairs.

*See* DE # 141 at 3; DE # 141-3 at 3.) The mortgage goes on to state that "Lender or its agents may make reasonable entries upon and inspections of the Property." (DE # 141-3 at 4.)

After Marshall had defaulted on the mortgage, defendant set out to make sure that the property was secure. To do so, Chase entered into a contract with SafeGuard Properties, LLC ("SafeGuard") to secure the property. (DE # 141-1 at 2.) The relationship between Chase and SafeGuard was an independent contractor relationship. (*Id.*) Ultimately, LPS Field Services ("LPS"), JAKK Mortgage Company ("JAKK"), and Robert Hashberger also became involved with securing the property.[4] (*Id.*) Chase had

---

[4] The evidence in the record does not make clear how LPS and JAKK got involved with securing the property. In fact, although plaintiffs mentioned LPS in their complaint (DE # 37), neither party has directed the court to any evidence indicating that LPS actually had a role in securing the property. But, in any event, the evidence in this case makes clear that the only action Chase took in ensuring that the property was secure was hiring SafeGuard to secure the property. (DE # 141-1 at 2.) Chase had no control over how SafeGuard chose to carry out that duty once SafeGuard was hired. (*Id.*) There is no evidence that Chase had a contract or even any contact with LPS, JAKK, or Hashberger. (*Id.*)

It is also clear that JAKK hired Hashberger to inspect the property. (*See* DE # 116-1 at 76.) But, there is no evidence regarding the relationship between SafeGuard, LPS, and JAKK. Although it would be helpful to have this missing information, it ultimately

no relationship with LPS, JAKK, or Hashberger. (*See id.*) Chase was unaware of the person or entity that would actually be securing the property. (*Id.*) Chase left that decision to the discretion of the independent contractor it hired to secure the property – SafeGuard. (*See id.*) As noted earlier, eventually LPS, JAKK, and Hashberger became involved with securing the property, presumably after being contacted by SafeGuard, although the record is not clear on this.

> The relationship between Chase and SafeGuard was limited:
>
> Neither Chase nor SafeGuard have any right, power or authority to enter in an agreement for or on behalf of, or to assume or incur, any obligations or liabilities, expressed or implied, on behalf of, or in the name of, the other party. Chase and SafeGuard are not in any partnership obligation and cannot impose liability on each other. SafeGuard's employees, methods, facilities and equipment are at all times under SafeGuard's exclusive direction and control.

(*Id.*)

Several months before the day in question, JAKK, through Hashberger, changed the locks on the house after Mr. Marshall had failed to make payments on it. (DE # 141 at 3; DE # 141-2 at 43-44; Marshall Dep. at pp. 43:16-44:6.) On multiple occasions prior to August 20, 2009, Hashberger had observed the property, and had never seen any cars or any people at the property. (*See* DE # 116-1 at 76.)

On August 20, 2009, plaintiffs Kimberly Wiley and John Marshall traveled to the property. Because plaintiffs no longer had a working key to the house, they were only

---

has no impact on the outcome of defendant's motion, as the court will explain below, because the evidence very clearly shows that the only action Chase took in attempting to secure the property was hiring SafeGuard.

able to gain access to the house on August 20, 2009 after Wiley "managed to finally find a way into the place," and then let Marshall in through the front door. (DE # 141 at 3; DE # 141-2 at 42-43; Marshall Dep. at pp. 42:24-43:18.) After Marshall and Wiley had gained access to the house, Hashberger went on a routine check of the property, and noticed that the front door of the home was open and that there were two vehicles parked in the driveway. (*See* DE # 116-1 at 76.)

Hashberger then went to check out the situation at the house, and, after encountering both Wiley and Marshall, called the police. (*Id.* at 76-77.) After the police arrived, they entered the property and placed Marshall and Wiley under arrest. (DE # 141 at 3; DE # 37.) Eventually, the police released Wiley and Marshall, and no charges were ever filed against either Wiley or Marshall. (DE # 141 at 3; DE # 37.)

As a result of this incident, plaintiffs filed suit against several defendants, including Chase. (DE # 37.) In their amended complaint, plaintiffs brought a federal claim under 42 U.S.C. § 1983 and state-law claims of negligence, wrongful eviction, trespass, property damage, and theft against Chase. (*Id.*) Chase moved to dismiss plaintiffs' claims, and the court, in a subsequent order, dismissed plaintiffs' § 1983 claim, plaintiffs' wrongful eviction claim, plaintiffs' property damage claim, and plaintiffs' theft claim.[5] (DE # 62.) The court denied defendant's motion as to plaintiffs'

---

[5] In their response brief, plaintiffs state: "It is noted that one of Marshall's claim [sic] is that Chase did nothing to mitigate damages when there was a roof leak. There is nothing in the evidentiary record to show that attempts were made to contact Marshall by Chase concerning this property. Marshall is contending that the roof leaked and damages were sustained in the property." (DE # 132 at 5.) Although plaintiffs

negligence and trespass claim, concluding that those claims could proceed under a respondeat superior theory of liability. (*Id.*) Plaintiffs' negligence and trespass claims are the only claims that remain pending against Chase.[6]

## II. Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there

---

mentioned a property damage claim in their amended complaint, the court dismissed that claim after concluding that plaintiffs had failed to state a claim on which relief could be granted. (DE # 62 at 7-8.)

[6] Neither plaintiffs' amended complaint (DE # 37) nor plaintiffs' response brief (DE # 132) make clear which claims plaintiffs are asserting on behalf of the Estate of Marjorie Marshall. Plaintiffs also do not put forth any arguments specific to the Estate of Marjorie Marshall. (DE # 132.) As the court will explain below, there are no genuine issues of fact requiring a trial in this case, so the court will assume that plaintiffs are asserting all remaining claims on behalf of the Estate of Marjorie Marshall.

is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

**III.     Analysis**

**A. Trespass**

To succeed on a claim for trespass under Indiana law, a plaintiff must prove two elements: "(1) the plaintiff must show that he possessed the land when the alleged trespass occurred, and (2) the plaintiff must demonstrate that the alleged trespasser entered the land without a legal right to do so." *Holland v. Steele*, 961 N.E.2d 516, 525 (Ind. Ct. App. 2012); *see also Bentz v. City of Kendallville*, 577 F.3d 776, 781 (7th Cir. 2009). Defendant argues plaintiffs have no evidence that any of the defendants entered onto the property without a legal right to do so because Chase had a right to enter onto and secure the property pursuant to the terms of the mortgage agreement. (DE # 141 at 5.) Defendant cites to the mortgage agreement that Marshall signed, which states that Chase is allowed to "do and pay for whatever is necessary to protect the value of the property" if Marshall fails "to perform the covenants and agreements contained" in the agreement. (DE # 141-3 at 3.)

Plaintiffs make two arguments in response. First, Plaintiffs note that a disputed issue of fact exists with regard to whether "Hashberger trespassed on the . . . property." (DE # 132 at 1.) Plaintiffs do not support this argument with any evidence, and conclusory assertions unsupported by evidence or argument are not sufficient to defeat summary judgment. *Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 894 (7th Cir. 2003). This argument therefore fails.

Next, plaintiffs argue that although Chase had the right to inspect the property, "Chase [did] not have the right to cause persons to come onto the property in the manner that Hashberger did which precipitated what happened with the Elkhart Police Officers already described." (DE # 132 at 5.) As the court noted earlier, however, the mortgage agreement that the Marshalls signed allowed Chase to "do and pay for whatever is necessary to protect the value of the property" if Marshall failed "to perform the covenants and agreements contained" in the agreement. (DE # 141-3 at 3.)

It is undisputed that Marshall had not paid the mortgage on the property for almost a year, and therefore, Marshall had failed "to perform the covenants and agreements contained" in the agreement. (*Id.*) Under the terms of the mortgage, Chase had the right to "do and pay for whatever is necessary to protect the value of the property[.]" (*Id.*) Plaintiffs provide no argument as to why this provision in the mortgage agreement did not allow Chase to do what it did in this case. Plaintiffs' general assertion that Chase was not allowed under the mortgage agreement to do what it did in this case is insufficient to create an issue of material fact on their trespass claim, given the clear language in the agreement indicating the contrary is true and plaintiffs' failure to support this assertion with any argument or evidence.

The language of the contract expressly allowed for Chase to do whatever was necessary to secure its interest in the property, and no reasonable jury could conclude that Chase is liable for trespass in this case. Because plaintiffs have failed to come forward with any evidence indicating that the actions of Hashberger on August 20, 2009

somehow violated the mortgage agreement, they have failed to raise a genuine issue of material fact on their trespass claim. Defendant is therefore entitled to summary judgment on plaintiffs' trespass claim.

**B. Negligence**

Defendant argues that it cannot be held liable on plaintiffs' negligence claim because Jakk, Hashberger, and LPS were, at most, independent contractors. (DE # 141 at 6.) Under Indiana law, a negligence claim requires proof of three elements: "(1) a duty on the part of defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Miller v. Griesel*, 308 N.E.2d 701, 706 (1974). In Indiana, "[t]he long standing general rule is that a principal is not liable for the negligence of an independent contractor." *Gwinn v. Harry J. Kloeppel & Assocs., Inc.*, 9 N.E.3d 687, 691 (Ind. Ct. App. 2014).

There are exceptions to this rule, however, when the principal retains control over the work of the independent contractor and in several other situations, including:

> (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing a specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will likely cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.

*Id.*; *see also Western Adjustment & Inspection Co. v. Indiana Gross Income Tax Div.*, 142 N.E. 2d 630, 634 (Ind. 1957) ("An independent contractor agrees to accomplish certain results . . . but such contractor is not controlled in the details, manner, or particular

method of performing the task. An agent, on the other hand, is subject to the control of the principal with respect to the details of the work."); *Burkett v. Crulo Trucking Co., Inc.*, 355 N.E.2d 253, 261 (Ind. Ct. App. 1986).

In response to defendant's argument, plaintiffs do not dispute that these parties were independent contractors. (DE # 132 at 2-3.) Instead of arguing that point, plaintiffs appear to argue that defendants' motion for summary judgment on their negligence claim should be denied because it is possible for a principal to be liable for the acts of an independent contractor in certain circumstances. (DE # 132 at 2-3.) Plaintiffs, however, have not put forth any argument or evidence that would raise an issue of fact on whether any of the five exceptions listed above exist in this case, and have not directed the court to any evidence that indicates that Chase had any control over SafeGuard, LPS, JAKK, or Hashberger.

The only argument plaintiffs make on this issue is that "there is a fact dispute or unresolved fact dispute by virtue of the omission in this record of the actual contract or contracts creating the relationship or relationships between and among [Chase, JAKK, and Hashberger]." (DE # 132 at 3.) Plaintiffs, once again, however, point to no actual evidence that would support an inference that any of the above situations existed in this case, and they cannot fend off summary judgment with "speculation[.]" *See Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009); *see also McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.").

Additionally, the only evidence the court has regarding the amount of control that Chase had over LPS, JAKK, and Hashberger indicates that it had no control over any of these parties. (DE # 141-2 at 2.) Moreover, the evidence the court has regarding the relationship between Chase and SafeGuard, the only entity that Chase had a relationship with regarding securing the property, indicates that Chase had very little control over SafeGuard. (*Id.*)

As noted above, under Indiana law, a principal is not liable for the negligence of its independent contractors. *Gwinn*, 9 N.E.3d at 691. By presenting evidence establishing that Chase had little control or no relationship with SafeGuard, LPS, JAKK, and Hashberger, Chase has met its initial burden on summary judgment. Because plaintiffs have failed to present any evidence indicating that the relationship between Chase and these entities was anything other than an independent contractor relationship, Chase is entitled to summary judgment on plaintiffs' negligence claim.

## IV. Conclusion

For the foregoing reasons, defendant Chase's motion for summary judgment (DE # 140) is **GRANTED**.

**SO ORDERED.**

Date: March 30, 2015

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT