IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| J. JOHN MARSHALL, ESTATE OF MARJORIE MARSHALL, and KIMBERLY WILEY | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:11 CV 332 ) |
| JP MORGAN CHASE BANK, AMERIPRISE BANK, FIDELITY NATIONAL FIELD SERVICES, INC., JAKK MORTGAGE COMPANY, LPS, FIELD SERVICES, ROBERT HASBERGER , CITY OF ELKHART, CHIEF DALE PFLIBSEN, CPL. MICHAEL WINDMILLER, PTLMN. BRANDON ROUNDTREE, SGT. TRAVIS SNIDER, PTLMN. MICHAEL JANIS, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court on defendants the City of Elkhart, Chief Dale Pflibsen, Cpl. Michael Windmiller, Ptlmn. Brandon Roundtree, Sgt. Travis Snider, and Ptlmn. Michael Janis's ("defendants") motion for summary judgment on plaintiffs John Marshall, the Estate of Marjorie Marshall, and Kimberly Wiley's ("plaintiffs")[1] claims. (DE # 119.) Plaintiffs have filed a response (DE # 132), and defendant has filed a reply. (DE # 136.) For the following reasons, that motion is granted.

---

[1] In an order being issued simultaneously with this one, the court will dismiss all of plaintiff Wiley's claims against all defendants for failure to prosecute. When the court uses "plaintiffs" in the analysis section of this order, it will be referring to only John Marshall and the Estate of Marjorie Marshall.

I. **Facts and Background**

This case has been pending for quite some time, largely due to the fact that plaintiffs have delayed their prosecution of this case at almost every stage of the litigation. (*See e.g.,* DE # 70.) Each group of defendants in this case has filed a separate motion for summary judgment, and plaintiffs have filed a collective response to all three motions for summary judgment. (DE # 132.) Plaintiffs' response brief does not have "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary[,]" as required by N.D. IND. LOCAL RULE 56-1(b)(2).[2] Plaintiffs' response is rife with grammatical and spelling errors, and often references facts without any citation to evidence. Additionally, plaintiffs' response fails to address the substance of most of the arguments made by defendants in their three motions for summary judgment. Despite the inadequacies in plaintiffs' response, the court will do its best to accurately summarize the facts and arguments that the parties have set out in their briefs.

The following facts come from defendants' brief in support of its motion for summary judgment and the exhibits attached to that brief, unless otherwise noted. (DE # 120.) Because plaintiffs have not addressed any of these facts in their response

---

[2] Plaintiffs' response brief is divided into three sections, with each section addressing one of the moving defendant's motions. (DE # 132.) The closest plaintiffs come to including a "Statement of General Disputes" in their response brief is a list of the factual disputes that exist with regard to one of the motions for summary judgment filed by two other defendants. (*Id.* at 1.) Plaintiffs included no such similar content in their response to defendants' motion for summary judgment. (*Id.* at 5.)

brief, and in fact have included no citations to facts in the record in the portion of their response that addresses defendants' motion, the court will treat these facts as undisputed. FED. R. CIV. P. 56(e)(2); (*see also* DE # 132).

This suit arises out of events that took place on August 20, 2009 at 1625 Brookwood Drive in Elkhart Indiana ("the property"). (DE # 37.) On August 20, 2009 plaintiffs John Marshall and Kimberly Wiley were both at the property. (DE # 120 at 2; DE # 120-1 at 11; Marshall Dep. at p. 39:14-18.) Although both Marshall and Wiley had keys to the house, the house was in foreclosure, and the locks had been changed. (DE # 120 at 2; DE # 120-1 at 12; Marshall Dep. at pp. 42:24-44:8.) Despite not having a key to gain access to the house, Wiley "managed to finally find a way into" the house, and let Marshall in through the front door. (DE # 120 at 2; DE # 120-1 at 12; Marshall Dep. at pp. 42:24-43:6.) Marshall was aware that the locks had been changed several months before August 20, 2009. (DE # 120 at 2; DE # 120-1 at 12; Marshall Dep. at p. 43:23-25.) In fact, Wiley and Marshall had previously entered the house after the locks had been changed, but their previous method of ingress was blocked on August 20, 2009. (DE # 120 at 2; DE # 120-1 at 17; Marshall Dep. at pp. 61:16-62:7.)

After Marshall and Wiley gained entry into the house, they had a confrontation with a man, Robert Hashberger, who told Marshall and Wiley that they were not supposed to be in the house. (DE # 120 at 3; DE # 120-1 at 22; Marshall Dep. at p. 82:10-24.) Hashberger, who worked for JAKK Mortgage Services, and was contracted to do

inspections on the house, contacted the Elkhart Police Department to report what he believed to be two burglars at the property. (DE # 120 at 3; DE # 120-3 at 1.)

Approximately 15-30 minutes after Marshall and Wiley's encounter with Hashberger ended, several Elkhart Police Officers arrived at the property. (DE # 120 at 3; DE # 120-1 at 23; Marshall Dep. at pp. 86:21-87:24.) Two or three officers came into the house pointing their guns at Marshall, and told Marshall and Wiley they were under arrest.[3] (DE # 120 at 3; DE # 120-1 at 23; Marshall Dep. at pp. 86:21-87:24.) The officers instructed Marshall to get down on the floor, and Marshall argued with them regarding whether or not he was going to follow that command. Marshall did not go to the ground voluntarily and was not taken to the ground by the officers. (DE # 120 at 3-4; DE # 120-1 at 37; Marshall Dep. at p. 143:7-15.) Instead, the officers handcuffed Marshall and either "dragged" or "escorted" him out of the house. Marshall was "probably not" walking and moving his feet voluntarily. (DE # 120 at 4; DE # 120-1 at 23; Marshall Dep. at pp. 87:19-88:11; DE # 120-1 at 37; Marshall Dep. at pp. 142:17-143:1.)

Once outside the house, the officers suggested to Marshall that he was not supposed to be there. (DE # 120 at 4; DE # 120-1 at 23; Marshall Dep. at p. 89:9-16.) At that point, it became clear to Marshall that the officers thought that he and Wiley were burglars, and also that the officers were likely there because Hashberger had called the

---

[3] Once outside, there were a total of four officers present. (DE # 120-1 at 24; Marshall Dep. at p. 91:10:15. DE # 120-1 at 37; Marshall Dep. at p. 141:11-19.)

police. (DE # 120 at 4; DE # 120-1 at 23; Marshall Dep. at p. 89:16-22.) The officers asked Marshall for the deed to the property, but he did not have it. (DE # 120 at 4; DE # 120-1 at 23; Marshall Dep. at p. 89:22-25.) Marshall also did not show the officers a driver's license because his license had a Florida address on it. (DE # 120 at 4; DE # 120-1 at 23; Marshall Dep. at p. 90:1-8.)

Marshall believes he then told the officers that the house was in foreclosure, and that the locks had been changed so he had to find another way into the house. (DE # 120 at 4; DE # 120-1 at 39; Marshall Dep. at p. 150:3-13.) After 30-45 minutes outside, during which time Marshall and Wiley were required to stand, Wiley suggested to the police that they contact the city.[4] (DE # 120 at 4; DE # 120-1 at 24; Marshall Dep. at pp. 90:18-91:9.) A few minutes later, an officer came back and instructed the other officers to remove plaintiffs' handcuffs and let them go. (DE # 120 at 4; DE # 120-1 at 24, 26; Marshall Dep. at p. 91:10-19; 99:7-11.) Weather reports from August 20, 2009 show that the maximum temperature reached in Elkhart Indiana was 77 degrees, although plaintiff testified that he believed it was 85 degrees that day. (DE # 120 at 4-5; DE # 120-4 at 1; DE # 120-1 at 26; Marshall Dep. at p. 99:10-16.)

Marshall testified that one of the officers put his hands in Marshall's pockets and "let his hands wander a little bit too far." (DE # 120 at 5; DE # 120-1 at 25; Marshall Dep. at p. 93:1-7.) One of the officers also stomped on Marshall's left foot as Marshall was being guided out of the house, injuring Marshall's foot. (DE # 120 at 5; DE # 120-1 at 25;

---

[4] Presumably to check the ownership of the house.

5

Marshall Dep. at p. 93:9-15.) Marshall also testified that he believed that the handcuffs were tightened more than was necessary. (DE # 120 at 5; DE # 120-1 at 37; Marshall Dep. at p. 144:10-15.) He also testified that the handcuffs were digging into his flesh,[5] and asked the officers to loosen the handcuffs, but does not remember if the officers loosened the handcuffs or not. (DE # 120 at 5; DE # 120-1 at 37; Marshall Dep. at p. 144:10-15.)

As a result of this incident, plaintiffs filed suit against defendants alleging a bevy of claims, including claims of excessive force, false arrest, and illegal search under 42 U.S.C. § 1983, and state law claims of assault, battery, negligence, and intentional infliction of emotional distress. (DE # 37 at 7-9.) Defendants have now moved for summary judgment on plaintiffs' claims.[6]

## II. Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

---

[5] Marshall was not bleeding anywhere after the incident. (DE # 120-1 at 37; Marshall Dep. at 143:21-23.

[6] Neither plaintiffs' amended complaint (DE # 37) nor plaintiffs' response brief (DE # 132) make clear which claims plaintiffs are asserting on behalf of the Estate of Marjorie Marshall. Plaintiffs also do not put forth any arguments specific to the Estate of Marjorie Marshall. (DE # 132.) As the court will explain below, there are no genuine issues of fact requiring a trial in this case, so the court will assume that plaintiffs are asserting all remaining claims on behalf of the Estate of Marjorie Marshall.

317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at

7

255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

### III.     Analysis

As noted earlier, in their amended complaint, plaintiffs bring a host of state and federal claims against defendants. (DE # 37.) Defendants moved for summary judgment on all of plaintiffs' claims. (DE # 120.) In their response to defendants' motion for summary judgment, however, plaintiffs only address one of the claims raised in their amended complaint – their excessive force claim. (DE # 132 at 3-5.) Because plaintiffs failed to address all of their other claims in their response brief, the court will deem those claims abandoned. *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Witte v. Wisconsin Dept. of Corrections*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [the argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini,* 724 F.3d 965, 967 n.1 (7th Cir. 2013); *Palmer v. Marion Cnty.*, 327 F.3d 588,

8

597–98 (7th Cir. 2003) ("[B]ecause [plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment . . . his negligence claim is deemed abandoned."); *see also Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").[7] The court will therefore proceed to analyze defendants' motion as it relates to plaintiffs' excessive force claim.

"Excessive-force claims in the context of an arrest are reviewed under the Fourth Amendment's objective-reasonableness standard." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010). "This inquiry requires an examination of the 'totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake.'" *Id.* (quoting *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir. 2000)). The nature and extent of the force an officer may reasonably use "to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 861-62 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Because law-enforcement officers must make critical, split-second decisions in difficult and potentially explosive

---

[7] Plaintiffs appear to allege a a municipal liability claim against the City of Elkhart and its police chief. (DE # 37 at 8.) In their response brief, plaintiffs make no mention of this claim or any argument as to how the City of Elkhart or its police chief are liable in this case. (DE # 132.) The court therefore deems this claim abandoned as well.

9

situations . . . .[the court must evaluate] the reasonableness of the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight [ . . . .]'" *Id.* at 862 (quoting *Graham*, 490 U.S. at 396).

Before addressing the arguments defendants make in their motion for summary judgment, it is important to note exactly which actions by the officers plaintiffs contend amounted to excessive force. As best the court can tell, Marshall is contending that the following actions constituted excessive force: (1) handcuffing Marshall during the entirety of the incident; (2) tightening the handcuffs on Marshall more than necessary; (3) making Marshall stand the entirety of the incident on a hot summer day; (4) stomping on Marshall's foot while leading him out of the house; and (5) one of the officers putting his hands in Marshall's pockets and "let[ting] his hands wander a little bit too far." (DE # 120 at 5; DE # 120-1 at 25; Marshall Dep. at p. 93:1-7.)

First, defendants argue that plaintiffs' excessive force claim fails because Marshall has failed to identify any of the officers that took the actions noted above. (DE # 120 at 5-6.) Plaintiffs do not respond to this argument directly. (DE # 132 at 3-5.) It is undisputed that plaintiffs have not identified which officer actually committed any of these acts. Plaintiffs apparently did not determine which officers committed these acts during discovery, and they have failed to direct the court to evidence of any effort they undertook to do so.

As the court noted above, there were four officers present during the incident at the property. (DE # 120-1 at 24; Marshall Dep. at p. 91:10:15. DE # 120-1 at 37; Marshall

Dep. at p. 141:11-19.) Plaintiffs, however, have failed to identify which officers committed the specific acts noted above. "[I]n order to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009) (citation omitted); *see also Allen v. Wine*, 297 F. App'x 524, 531 (7th Cir. 2008) ("To hold a person liable under § 1983 . . . the plaintiff must prove that the defendant was personally involved in the deprivation of a constitutional right."). By failing to identify which officers committed these acts, it would appear that plaintiffs cannot recover against the officers for the individual acts noted above. *Cherry v. Washington County, Wis.*, 526 F. App'x 683, 688 (7th Cir. 2013) ("The district court noted . . . that [the plaintiff] did not identify who shoved him during the arrest, nor did he make any effort during discovery to find out which of the three defendants was responsible. The judge reasoned that this omission is also dispositive, and again we agree.").

As plaintiffs correctly point out in their reply brief (DE # 132 at 4), however, "it is possible to hold a named defendant liable for his failure to intervene vis-à-vis the excessive force employed by another officer, even if the plaintiff cannot identify the officer(s) who used excessive force on him." *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012); *see also Cherry v. Washington County, Wis.*, 526 F. App'x at 688 ("We add the caveat, though, that a plaintiff who was assaulted by one police officer in the presence of others need not identify the officer who struck him if the assault was ongoing and other officers had a realistic opportunity to intervene. (citations and

quotations omitted)); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009)("Even as a bystander . . . [an officer] can be held liable under § 1983 if [the plaintiff] can show that [the officer] (1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring."). Plaintiffs argue that any of the four officers could have intervened by allowing Marshall and Wiley to sit down and could have also undone their handcuffs. (DE # 132 at 4.)

With regard to the two acts Marshall complains of that can be attributed to an individual officer instead of the group the group of officers as a whole – an officer stomping on his foot and another officer putting his hands in Marshall's pockets and letting his hands "wander a little bit too far[]" – there is no evidence to suggest that any of the officers "had a realistic opportunity to intervene to prevent the[se] act[s] from occurring." *Downey*, 581 F.3d at 472. Marshall testified that three officers were leading him out of the house, and during this process, one of the officers stomped on his foot. (DE # 120-1 at 25; Marshall Dep. at p. 93-10:25.) Yet this only happened once, and there is no evidence that any of the other officers knew that this particular officer was going to stomp on Marshall's foot or had any chance to prevent it from happening.

Marshall also testified that one of the officers put his hands in Marshall's pockets and "let his hands wander a little bit too far." (DE # 120-1 at 25; Marshall Dep. at p. 93:1-7.) Once again, however, there is no evidence that any of the other officers had an opportunity to prevent this from happening or even knew that it had occurred. Thus,

plaintiffs have directed the court to no evidence that any of the officers "had a realistic opportunity to intervene to prevent the act from occurring." *Downey*, 581 F.3d at 472.

The officers could have intervened to stop the other acts that Marshall argues constitute excessive force – (1) handcuffing Marshall during the entirety of the incident (2) tightening the handcuffs on Marshall more than necessary; (3) making Marshall stand the entirety of the incident on a hot summer day. Even assuming that these officers could have put an end to these other acts, they are still only liable if those acts constituted excessive force or a constitutional violation. *Downey*, 581 F.3d at 472; *see also See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

In their brief in support of their motion for summary judgment (DE # 120 at 12-16), defendants argue that none of the acts noted above amount to excessive force.[8] With regard to Marshall's allegations about being tightly handcuffed for the entire 30-45 minute encounter, the Seventh Circuit has allowed for the possibility that overly-tight handcuffs can amount to excessive force. In *Payne v. Pauley*, the Seventh Circuit concluded that the plaintiff was entitled to a jury trial on her excessive force claim when the plaintiff presented evidence that the officers refused to loosen her handcuffs despite being told by the plaintiff that her hands were numb from the cuffs and that the plaintiff underwent two wrist surgeries as a result of the overly-tight handcuffs. 337 F.3d 767, 774-75, 778-81 (7th Cir. 2003). Similarly, in *Herzog v. Village of Winnetka*, the Seventh

---

[8] The court will limit this analysis to only the acts that the officers could have prevented if they had intervened.

Circuit held that the plaintiff was entitled to a jury trial on her excessive force claim after she presented evidence that "the arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited over an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital, even though she had passed all field sobriety tests and had registered a 0.00 Breathalyzer reading." *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (citing *Herzog*, 309 F.3d 1041, 1043-44 (7th Cir. 2002)); *see also Lester v. City of Chi.*, 830 F.2d 706, 714 (7th Cir. 1987) (concluding that reasonable jury could find for the plaintiff when the plaintiff introduced evidence that one of the officers threatened to hit her with his fist, one of the officers kneed the plaintiff in her back, one of the officers dragged the plaintiff down a hallway, one of the officers handcuffed the plaintiff to a radiator, and one of the officers handcuffed the plaintiff so tightly that her wrists were bruised.)

The Seventh Circuit reached the opposite conclusion in *Tibbs v. City of Chicago*, where the plaintiff presented evidence that he had asked the officers to loosen his handcuffs on the ride to the police station, and they refused. 469 F.3d at 662-63. Once at the police station, the plaintiff again complained about the handcuffs being too tight, and another officer refused to loosen them. *Id.* at 663. After 20-25 minutes at the station, the plaintiff's handcuffs were finally removed. *Id.* The plaintiff never sought any medical treatment for his wrists. *Id.*

The Seventh Circuit determined that no reasonable jury could find that the officer's actions to be objectively unreasonable:

> The plaintiff in Payne told the officers her hands were numb and ultimately underwent two surgeries because of wrist injuries caused by the too-tight handcuffs. Payne, 337 F.3d at 774–75, 780–81. Here, Tibbs complained only once to Officer Kooistra, gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care. The plaintiffs in Herzog and Lester experienced tight handcuffing more akin to the discomfort Tibbs alleges, but the decisions in those cases were hardly based on overly tight handcuffs alone. The Herzog and Lester plaintiffs presented evidence they had suffered numerous additional injuries, including a cracked tooth, plainly gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway. Herzog, 309 F.3d at 1043–44; Lester, 830 F.2d at 714.
>
> [The plaintiff in Tibbs] likely suffered some discomfort and pain from handcuffs that Officer Kooistra applied somewhat too tightly; [the plaintiff] complained to Officer Kooistra once about his handcuffs without elaborating on any injury, numbness, or degree of pain; [the plaintiff] was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury. [The plaintiff] cites no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations.

*Id.* at 666.

The evidence in the record reveals that this case is far more analogous to the facts of *Tibbs* than the facts of *Pauley*, *Herzog*, and *Lester*. Marshall was handcuffed for a total of 30-45 minutes. Marshall testified that he felt the handcuffs were tightened more than reasonably necessary. He also testified that he asked the officers to loosen the handcuffs, but could not remember if the officers obliged his request or not. (DE # 120-1 at 37; Marshall Dep. at p. 144:10-15.) Marshall, however, has failed to direct the court to any evidence that the handcuffs actually injured him in any way. This evidence is

15

clearly insufficient for a reasonable jury to conclude that the officers in this case are liable for excessive force.

This is not the only evidence upon which plaintiffs rely, however. Marshall also testified that he was forced to stand during the entire encounter, which lasted 30-45 minutes. Although Marshall has directed the court to evidence that it was hot that day (DE # 120-1 at 26; Marshall Dep. at p. 99:10-16), Marshall has failed to direct the court to any evidence that he was injured because he was forced to stand and has presented no cases indicating that making a person stand for an extended period of time, in uncomfortable temperatures or otherwise, amounts to excessive force. And the cases that the court was able to find on its own indicate that the opposite is true. *Pena-Ordonez v. City of Farmers Branch Police Dept.*, No. 3:13–cv–420, 2013 WL 1187277, at *3 (N.D. Tex. Feb. 27, 2013) ("Plaintiff appears to assert claims for excessive force, alleging that he was improperly restrained while his blood was being drawn, forced to stand with his hands behind his back while being questioned, handcuffed to a chair and gurney, and threatened with a taser gun. . . . The undersigned concludes that Plaintiff's allegations do not establish a constitutional violation."); *Johnson v. Ciesielski*, No. 1:10–cv–1453, 2013 WL 139673, at *4 (S.D. Ind. January 8, 2013) ("The motion for summary judgment on Johnson's Fourth Amendment allegation of excessive force for allegedly being 'handcuffed in sub-freezing weather [and being] placed on the curb with no more than a thin jacket and shorts, and held him for a time exceeding one (1) hour.' Here, defendant officers did not commit excessive force when Johnson was made to stand in

the cold weather, fully clothed, for a period of time."); *Williams v. Mitchell*, No. 03-CV-842, 2006 WL 1876678, at *5 (S.D. Ill. July 5, 2006) ("No jury would find that being made to stand against a wall for twenty to twenty-five minutes is excessive force.").

In sum, the court concludes that no reasonable jury could find the defendant officers in this case liable for excessive force on the evidence presented. Therefore, defendants have met their initial burden on summary judgment. Because plaintiffs have not come forward with evidence that would raise a genuine issue of material fact on their excessive force claim, defendants' motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment (DE # 119) is **GRANTED**.

**SO ORDERED.**

Date: March 30, 2015

                                               s/James T. Moody
                                               JUDGE JAMES T. MOODY
                                               UNITED STATES DISTRICT COURT